RAYMOND *v.* HENDERSON.

4-5189                          120 S. W. 2d 153.

Opinion delivered October 10, 1938.

*Miles, Armstrong & Young,* for appellant.

*Paul E. Gutensohn* and *Wm. K. Harris,* for appellee.

GRIFFIN SMITH, C. J. Eugene Henderson, a real estate broker of Fort Smith, alleged in his complaint that Mary Raymond and Leon Williams were due him the sum of $1,000 as commission. On trial by jury judgment was given for $250. Prior to judgment Williams' motion to dismiss as to himself was sustained. Mrs. Raymond alone has appealed.

It is contended by appellee that Williams was the agent of appellant; that Louis Phillips was appellee's agent, and that Phillips, on two or three occasions in December, 1935, or in January following, contacted Williams and asked the latter to set a price on certain real property owned by appellant.

It is further contended that appellant had been contacted during the same period; that she referred the inquiry to Williams; that Williams quoted a price of $21,-000 to Phillips, from which a commission of $1,000 was to be paid appellee.

In appellee's brief it is stated: "The brokerage fee was arrived at by adding the usual 5% commission to the broker for procuring a purchaser ready, willing, and able to purchase, to the net sum Mrs. Raymond was to receive. Thereafter appellee, through his agent, Louis Phillips, procured a purchaser, Henry Armstrong, before the offer was withdrawn, and he was ready, willing, and able to buy said real estate at the price quoted. Phillips notified Leon Williams, disclosing his purchaser, and requested that the offer be accepted. Williams refused to complete the sale for $21,000 after acceptance by Armstrong, and raised the price to $25,000. Williams would not deal further with appellee or his representative, Louis Phillips. He negotiated with Mr. Armstrong direct and sold the real estate to him for $22,500. Mr. Williams had never contacted Henry Armstrong until after he refused to accept $21,000, the offer made through Phillips."

Appellant's contention is that she did not agree to sell the property for $21,000, and did not authorize Williams to make such a contract.

Phillips testified that when he saw Williams, the latter explained that he did not know whether he could sell the property, but stated that he would find out. . . . "so I telephoned Mrs. Raymond in Memphis. She would not give me any price, and told me to see Leon . . . that he had authority to handle her property. . . . He finally gave me a price of $21,000. . . . Williams called me one afternoon . . . and said, 'Louis, can't you divide that commission with me?' And I said, 'Leon, I don't see how I can. I have worked pretty hard on the deal, . . . and I cannot divide it.'

"He didn't say anything about withdrawing the $21,000 proposition. He said the commission would be a thousand dollars and that would be 5% on the deal, and $500 would be half of it. . . .

"Armstrong called me at my office and told me to have the abstract made, that he was ready to go through with the deal. Williams said, 'Louis, the price to you now is $25,000.' I said, 'Mr. Williams, my price is $21,000. That is what I did the work on, and I earned my commission, and Henry will not pay $25,000.' He said, 'He will

pay $25,000 if he gets it.' " The witness further testified that he did not release Williams from the contract.

Continuing his testimony, Phillips said that he told Armstrong what Williams had said, and that Armstrong requested him to go back, "and maybe you can get it." When he talked again with Williams the latter insisted on $25,000. Phillips again went back to Armstrong. . . . "and I said, 'Henry, suppose you go and see what you can do about it.' . . . Armstrong finally came to an agreement with Williams without any commission to me, at $22,500. My commission, of course, was to come from Mr. Williams. . . .

"Williams wrote on the contract, after the deal was made and everything signed: 'I am not to pay any commission.' I did not relieve him from the contract.

"After the contract was signed Henry said I had worked pretty hard and that he felt like giving me $100. I told him I was glad to get it, but that he didn't owe me anything; that I was looking to Leon Williams. Henry also gave me the insurance on the building. I received approximately $125 from Henry altogether. . . . I never did go to Leon Williams and ask him for my commission. I did not think there was any use in it—he put on the contract that he was not to pay any commission. . . . I read the contract.

"I went ahead and prepared the deed because I felt like as a real estate man I should help him. . . . I did not file suit then and force Mr. Williams to go through with his contract for $21,000 because he put in there $22,-500. . . . The first time I talked with Williams, in January, 1935, he did not know whether he could get a price on [the property] or not. Williams never told me to see Mrs. Raymond. . . . I talked to Mrs. Raymond in Memphis—I think I talked to her twice. I called Mrs. Raymond because I had not been able to get a price out of Leon Williams. She wrote me that she wanted $25,000 for the property. I knew she owned the property before I went to see Mr. Williams. . . . I did not say anything to Mr. Williams about having this letter from Mrs. Raymond stating that she wanted $25,000. I never told him that I had talked to her at all."

Williams flatly denied that he quoted Phillips a price of $21,000. Stating that he was a real estate agent and handled business for Mrs. Raymond, Williams testified:

"I am familiar with the building Henry Armstrong purchased. I rented it and collected the rents and put them in the bank to Mrs. Raymond's credit. I assess her property and pay her taxes and insurance. I am not authorized to rent, lease, or sell her property without her consent. . . .

"I told Phillips I would recommend $25,000 with the understanding he would split the commission with me. He said he wanted Mrs. Raymond's address and I gave it to him, and I received a letter from her May 15. . . . After a conversation with Mr. Phillips on the telephone, she wrote me a letter in which she stated that she had been offered $20,000. I recommended a price of $24,000 net to her, and $500 of the commission to me, and I would give her my commission. . . .

"Phillips came to see me the second time and told me he could get $21,000 for the building and would give me $500 out of his commission. . . . Armstrong called me up and came to see me and said he would like to have the property. . . . I told him that if he would take care of Louis Phillips I would recommend a price of $22,500. I wired Mrs. Raymond and recommended the price. . . . Louis Phillips brought the contract to my office. . . . I said, 'Louis, it is a clear understanding that if Mrs. Raymond takes $22,500 net, whatever you get, you get from Armstrong.' And he said it was all right."

Mrs. Raymond testified that she had some telephone conversations with Phillips, but that they were not in January. "I was in Fort Smith all of January, February, and March, and up to April 4, and then went to Memphis. I had the conversations with Mr. Phillips while in Memphis. Immediately after the conversations I wrote Mr. Williams—on May 15. The first notice I had about the negotiations was in a letter from Mr. Phillips. The second time I heard from him I told him I would not take less than $25,000. I did not authorize Mr. Williams to take less than that amount. I just told Mr. Phil-

lips to see Mr. Williams. Mr. Phillips made an offer of $20,000. I came back to Fort Smith in September."

Joseph R. Brown, Fort Smith attorney, testified: "I represented Mrs. Raymond in this transaction. After the deal was closed I was employed to write up the papers that were necessary. During the course of the prepara- tion of the papers Mr. Phillips came in and took them. He told me Mrs. Raymond was getting $22,500 out of the deal, and that Mr. Armstrong was to take care of his compensation in the matter."

The questions for determination are: Whether substantial evidence was offered by appellee (a) on the contention that appellant, in her conversations with Phillips by telephone, referred him to Williams and, stated that any price Williams made would be satisfactory to her; (b) whether Williams quoted a price of $21,000 to Phillips, and (c) whether Williams was, in fact, authorized to bind his principal; and finally (d) whether Phillips, by participating in the final transactions whereby Armstrong purchased for $22,500, waived appellee's alleged rights under the contract contended for, and is estopped to set up the original claim.

At the close of testimony the defendant asked permission to amend her answer and to plead estoppel. Evidence of Phillips' participation in the consummated sale was developed when Armstrong's written contract was filed as an exhibit to his testimony.

It is our view that the amendment should have been allowed. But it is our further view that a verdict should have been instructed for both defendants. It is undisputed that Phillips aided in the sale; that he accepted $100 from Armstrong; that he procured the contract and other papers from Brown; that he knew of the indorsement placed on the contract that no commission was to be paid by Williams, and that he accepted further benefits from Armstrong in the form of insurance privileges. Having reached this conclusion, it is unnecessary to discuss other assignments.

The judgment is reversed, and the cause is dismissed.